## Goodrich v. Czencsits

*Jacob Philip* and *Murray Mackson*, for plaintiffs.
*Martin Philip*, for defendant.

HEIMBACH, P. J., September 25, 1963.—This matter comes before the court upon plaintiffs' complaint in equity for injunctive relief and damages, and defendant's answer thereto.

## Questions Involved

Are Plaintiffs entitled to Injunctive relief from Cooking Odors Emanating from Defendant's restaurant?

Are Plaintiffs Entitled to Damages?

## Findings of Fact

(1.) Defendant is the lessee of premises known as 412 Delaware Avenue, Palmerton, Pa. On the first floor defendant conducts a restaurant business.

(2.) Plaintiffs are the owners of the westerly adjacent attached premises, known as 410 Delaware Avenue, and reside on the second floor thereof. On the first floor plaintiffs conduct an ice cream parlor business and have resided at and conducted such business at such premises for the past 16 years.

(3.) Defendant purchased the restaurant business, which previously had been conducted in such premises for 11 years, in February 1959.

(4.) Several months after purchasing such restaurant business, defendant installed a grill in the front of the building to do short order cooking; all cooking prior to such grill installation was done in the rear of the building. Above the grill is a canopy, which contains a filtering system to collect odors, grease and other discharges from the cooking. Duct work connects the canopy to an outside metal receptacle. The receptacle is in the nature of a sign, 12½ feet long and 10 inches deep. It is fastened to the building between the first and second stories and runs the full width of the front of defendant's premises. The sign contains duct work and fans and exhausts such odors, hot air, etc., to the east of the premises.

(5.) When plaintiffs' complaint was filed, defendant exhausted odors, grease, etc., by means of two exhaust fans fitted in the outside wall, permitting grease and other dirt particles to collect on defendant's canvas awning, as well as on plaintiffs' premises.

(6.) Defendant corrected this condition by the installation of the metal receptacle referred to in finding of fact (5). Grease and other particles are contained in this metal receptacle and are removed through hinged openings in such receptacle. The canvas awning has been removed.

(7.) Defendant presently is following the accepted method of disposing of odors, grease, etc., from the grill.

(8.) The premises are located in a commercial zoned area and the area is suitable to conduct restaurant activities.

(9.) Defendant also maintains a kitchen in the rear of the premises where cooking is done. The cooking odors are exhausted to the outside rear of the building by a fan. These odors are not disturbing to plaintiffs.

(10.) To the east of the premises and between a building erected thereon is a space of approximately one foot.

(11.) The cooking odors from the grill enter the residence and business establishment of plaintiffs, and are particularly annoying to plaintiffs and their customers during the summer months when, because of such odors, they are obliged to keep their windows and doors shut to lessen the offensiveness of such odors.

## Discussion

The evidence establishes that cooking odors do penetrate plaintiffs' residence and business establishment, to the annoyance of plaintiffs and their customers. The evidence is that plaintiffs frequently are denied the use of their living room on the second floor because of these odors. The writer of this opinion frequently has

walked past the restaurant and has smelled these odors. Although we cannot say they are particularly annoying to us, it is our opinion that they would be if we were obliged to endure them as frequently as do plaintiffs. We conclude from the evidence, and our own personal knowledge, that plaintiffs are genuinely disturbed in their occupancy by reason of defendant's use of his cooking grill.

Although defendant's restaurant is not a nuisance per se, we are of the opinion that if corrective measures reasonably may be taken by the defendant to remedy the offensive condition insofar as plaintiffs are concerned, such measures should be taken: Herring v. H. W. Walker Co., 409 Pa. 126.

The parties, at our suggestion, hired the services of Thomas A. Coughlin & Company, consulting engineers, to examine the premises with a view to suggesting a remedy for the condition and to prepare a cost estimate for the correction thereof. Its report, by agreement of the parties, has been made a part of the record. Such report shows that the odors could be eliminated entirely by duct work from the grill to above the roof line of defendant's building, at an estimated cost of $1,273. This duct work, under the engineers' proposal, would follow the path of the present sign, finding of fact 4, and then up to the roof of the building in the space between defendant's premises and the adjacent premises to the east.

Although defendant's landlord testified that he would not grant permission to defendant to make the minor building alteration necessary to install the duct work, we are of the opinion that should defendant be given the alternative either of getting rid of the odors or cease grill operation at its present location, defendant's landlord would recant.

We are not unmindful of the fact that to place the duct work in the space between defendant's premises

and the adjacent premises permission might have to be obtained from the owner of such adjacent premises. No testimony was forthcoming on this point, but we would assume that, with a little persuasion, such permission, if necessary, would be forthcoming. Should such space not be available for any reason whatsoever, it is apparent that the duct work could be placed in the front of the building.

It is our opinion that the expense item necessary to correct the odorous condition is not unreasonable, and there is evidence to the effect that it will be less than the engineers' estimate. Defendant should make the necessary changes or desist from the operation of the front grill. We might add that during the 11 years the restaurant business was conducted by defendant's predecessor, with all cooking being done in a kitchen in the rear of the building, there were no bothersome odors. Should defendant not wish to remedy the front grill condition, it would not be unreasonable to confine the cooking to the rear kitchen.

We adopt the following statement from Herring v. H. W. Walker Co., supra, at 134:

" *'The defendant has failed to establish that the injury was unavoidable or to prevent it would necessitate such expenses as would deprive it of the use of its property . . .*

" *'It follows, therefore, that the general rule must apply, and that the defendant must use its own property so as to avoid injury to the plaintiff.' "*

### Conclusions of Law

(1.) The evidence is that plaintiffs suffered no monetary loss. Therefore, we make no award of damages.

(2.) Defendant's restaurant is not a nuisance per se.

(3.) Plaintiffs are entitled to a decree restraining defendant from cooking on his present front grill,

unless adequate arrangements are made to dispense the cooking odors so as not to interfere with plaintiffs.

(4.) That defendant should be given six months from this date to make the necessary corrections.

(5.) Defendant should pay the record costs.

### Decree Nisi

And now, to wit, this September 25, 1963, it is ordered and decreed as follows:

Defendant, Bert Czencsits, his agents and employes, shall be restrained and enjoined from exhausting cooking odors, other than from the rear of his premises, after six months from the date hereof, unless such odors are exhausted from above the roof line of his premises or from such other place that plaintiffs, Thomas A. Goodrich and Helen Goodrich, will not be affected thereby.

Defendant to pay the costs.

Notice to be given by the prothonotary to the parties that, unless exceptions shall be filed within 20 days from this date, the decree nisi, upon praecipe, shall become final.